**Simmie WHITT, Plaintiff-Appellee,**

v.

**Roger SMITH, et al.,
Defendants-Appellants.**

No. 86–2882.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1987.

Decided Nov. 2, 1987.

Franklin C. Cook, Rockford, Ill., for defendants-appellants.

Peter T. Sullivan, III, Sreenan & Cain, P.C., Rockford, Ill., for plaintiff-appellee.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff, Simmie Whitt, sued the defendants, the City of Rockford and several police officers, under 42 U.S.C. § 1983.[1] The plaintiff sought to recover damages for gunshot injuries he suffered when police made a warrantless entry into the plaintiff's apartment. Before trial, both the defendants and the plaintiff moved for summary judgment. The magistrate recommended that both motions be denied, and the district court adopted the magistrate's report and recommendation, with some additional comments. The defendants have appealed the denial of summary judgment on the issue of qualified immunity. Because we find that the district court did not adequately consider the evidence in

1. Section 1983 provides in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdic-

tion thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

the record in denying the defendants qualified immunity, we vacate the denial of summary judgment and remand to the district court for further proceedings.

## I. FACTUAL BACKGROUND

The plaintiff agrees that the statement of facts in the magistrate's report and recommendation is correct, and we draw our summary of the facts from that report.

The plaintiff lived with others in an apartment at 210½ Ogden Avenue in Rockford, Illinois. In the early hours of January 26, 1984, police entered the apartment and the plaintiff was shot and injured.

Five days earlier, a woman had been struck in the face with a gun by a black woman while shopping at O'Donnell's Foods in Rockford. Witnesses observed the assailant leaving with a black man in an older model green Chevrolet with the driver pointing a shotgun out the car's window.

A license check of the car indicated that the car was registered to John Moore, whose residence was listed as 210½ Ogden. Defendant Officer Scheffels was assigned to investigate the incident, and he contacted Moore. Moore denied any participation in the incident, and told Scheffels that he had loaned his car to an acquaintance named Jeff. After the victim disappeared the police did not pursue the investigation.

Late on January 25, 1984, police received a call for assistance from Charles Blissit at 236 North Independence Avenue. Blissit told police that three black men, all armed and one carrying a rifle, had just been at that address. Blissit said that he had been with the woman who was pistol-whipped at O'Donnell's, and that he recognized one of the three men as having accompanied the assailant at O'Donnell's.

While the police were investigating the incident on Independence Avenue, they received a report of a shooting at 1827 Green Street,[2] which is about five blocks from 236 North Independence Avenue. Roger Puri-

foy had been shot in the bathroom of his girlfriend's apartment. He told police that his assailants were three black men, all were armed, and one was carrying a rifle or shotgun.

Officer Scheffels, who was on duty that night, went to the vicinity of the Green Street incident, but did not speak with the victim or any witnesses. He did not go to the Independence Avenue location, but when he heard the information broadcast about the incident there, he responded by broadcasting information he had acquired through his investigation of the O'Donnell's incident. The police gathered at John Moore's apartment at 210½ Ogden. Moore's car was parked in front, and lights were on inside the apartment.

Defendant Sergeant Smith went to the Ogden Street address from the Green Street shooting. He decided that the officers should attempt to gain entry to the apartment by the resident's consent, if possible, but by force, if necessary. Two of the officers were assigned to the front of the building, and the other five went around to the rear entrance located at the top of some exterior stairs.

Defendant Officer McDonald, who was in full uniform, knocked on the rear door and announced himself as the police. After he repeated his knock and announcement, the door was opened by an individual who then attempted to shut it. The officers forced the door open and moved into the kitchen area of the apartment.

Immediately upon entering the apartment Officer McDonald noticed an adult male coming into the kitchen and carrying a shotgun. Officer McDonald shot his handgun at the man carrying the shotgun and wounded him in the arm. The man wounded by the shot was the plaintiff.

## II. DISCUSSION

*Qualified Immunity*

The defendants filed a motion for summary judgment largely based on the argu-

---

**2.** The magistrate found that there was some confusion as to which of these two incidents occurred first. We have accepted the magis-

trate's assumption, for purposes of the decision, that the call from Independence Avenue was received first.

ment that they were entitled to qualified immunity for the actions they took in making the warrantless entry. The district court, adopting the magistrate's report and recommendation, found that disputed issues of material fact remained for trial, and denied the defendants' motion for summary judgment. The defendants appealed.

■ Ordinarily, a denial of a motion for summary judgment is not immediately appealable because the denial "is usually grounded upon the presence of a triable issue of fact, and such an order of denial is interlocutory and not a final judgment for the claim still remains pending for trial." 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.21[2] at 56–127 (2d ed. 1987). Because the defendants asserted qualified immunity in their motion for summary judgment, however, the denial of the motion is immediately appealable. The Supreme Court, discussing this issue, has said that

> [t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision is effectively unreviewable on appeal from a final judgment.

*Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (emphasis in original). The Supreme Court thus found that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 530, 105 S.Ct. at 2817.

■ Whether a defendant is entitled to qualified immunity for his actions is a question of law for the judge to decide. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Llaguno v. Mingey,* 763 F.2d 1560, 1569

(7th Cir.1985), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986).

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred .... Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct....
>
> ... But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39 (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)). "[T]he appealable issue is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." *Mitchell,* 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9.

In this case, the magistrate did not mention the issue of qualified immunity in his report and recommendation to the district judge on the defendant's motion for summary judgment, which raised the issue. The district court adopted the magistrate's report with the additional comment that "while the qualified immunity standard differs from the standard courts apply in determining the underlying fourth amendment issue, the same facts are necessary to a full determination of both issues." Because the district court found that questions of fact remained that would bear on the existence of probable cause and exigent circumstances, and would resolve the issue of qualified immunity, the court denied the motion for summary judgment and left the factual questions for trial. No particular factual issues were identified in the district court's order.

■ The magistrate gave no consideration and the district court gave inadequate consideration to the qualified immunity is-

454

sue in light of its purpose: "that 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39). Because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, ... we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson,* 107 S.Ct. at 3039. Therefore, a district court must carefully consider "all the undisputed facts in the record," to determine a defendant's claim of qualified immunity to "shield public officials ... from the burdens of trial." *Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987).

It was error for the district court not to consider the specific factual situation applicable to the important qualified immunity concept. *Id.* at 649. It deserves careful consideration. The minute order disposing of the issue gives us little help in our review. Although the district court may have been correct in its belief that the questions of fact would go to both the immunity issue and the merits of the dispute, the two inquiries, while intertwined to some extent, are "conceptually distinct" and must be considered separately. *Mitchell,* 472 U.S. at 527–28, 105 S.Ct. at 2816–17; *Green,* 826 F.2d at 651–52 n. 3. We will not attempt the factual analysis to determine whether qualified immunity is applicable at this stage of the proceedings. We therefore vacate the judgment and remand the case to the district court to "consider all of the undisputed evidence in the record ... in the light most favorable to the non-movant." *Id.* at 650. We suggest no view on the merits of the qualified immunity issue. Circuit Rule 36 shall not apply.

VACATED AND REMANDED.