THOMAS SCHRATZMEIER, Plaintiff-Appellant, v. MARK MAHONEY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—3897

Opinion filed April 23, 1993.

John Thomas Moran, Jr., of Law Offices of John Thomas Moran, of Chicago (Barry S. Grossman, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy J. Arnold, Stephen J. Smalling, and William E. Spizzirri, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Thomas Schratzmeier (Schratzmeier), a former police officer for the Village of Bensenville, brought a negligence action against Metrocom and Metrocom's employee, Mark Mahoney, seeking recovery for injury to his back. Schratzmeier claimed that his back was injured when Mahoney negligently modified the seats of the Bensenville police department's new patrol cars by removing "shims and brackets" or "washers" to lower the seats. After considerable ac-

tivity in the case, which included defendants' filing various pleadings and motions and Schratzmeier amending the complaint, the circuit court granted defendants' motion for summary judgment, finding that Schratzmeier was collaterally estopped from pursuing his claim based upon the findings of the Bensenville Police Pension Board (Board). Schratzmeier now appeals from the order granting summary judgment. For reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

In 1982, around the time that the Bensenville police department obtained new squad cars, Schratzmeier began experiencing back pain. Within a week of driving one of the new squad cars, Schratzmeier noticed some back pain, and after two weeks, he complained to his shift commander about the seats of the new squad car. Although Schratzmeier suspected a correlation between the seats of the new squad car and his back pain, he continued to use the new squad car without making any adjustments to the seat. In August 1982 his back pain became so severe that he sought medical attention and subsequently underwent spinal fusion surgery for disc herniation and spinal stenosis.[1] As a result, Schratzmeier was unable to work from August 16, 1982, until January 1, 1983.

Due to his inability to work, Schratzmeier applied to the Board for disability benefits. He sought "line of duty" pension benefits, pursuant to section 3—114.1 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1981, ch. 108½, par. 3—114.1), based upon his belief that his back pain had been caused by the squad car seat. In the alternative, Schratzmeier requested "not line of duty" pension benefits, pursuant to section 3—114.2 of the Code (Ill. Rev. Stat. 1981, ch. 108½, par. 3—114.2).

The board of trustees for the Bensenville Police Pension Fund, which has exclusive authority to control and manage the pension fund, subject to judicial review pursuant to the Administrative Review Law (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 et seq.; Ill. Rev. Stat. 1981, ch. 108½, pars. 3—132, 3—133, 3—148), held an evidentiary hearing on Schratzmeier's application on December 16, 1982. Schratzmeier, represented by an attorney, attended and testified at the hearing.

---

[1]Spinal stenosis was explained by plaintiff's doctor as a narrowing of the spinal cord which results in the entrapment of the nerve roots. It is a degenerative disc disease that occurs over time.

Considerable evidence was presented at the pension board hearing, including the testimony of two doctors, a mechanical engineer and two fellow Bensenville police officers. According to Schratzmeier's own testimony, he was a police officer for the Bensenville police department since 1972 with a history of back pain. In 1978, after being involved in an automobile accident in a police chase, he underwent surgery for the removal of a herniated disc. In 1980, after having knee surgery due to a work-related fall, he was hospitalized and placed in traction for muscle spasms in his back. After this 1980 hospitalization Schratzmeier didn't experience any back pain until sometime around July 1982,[2] about three days after the police department obtained new squad cars. By August 16, 1982, Schratzmeier had to be hospitalized due to the back pain and subsequently underwent surgery.

Schratzmeier further testified that he was aware that the fleet of new 1982 Ford LTD squad cars were all modified at the police department prior to their being put into service. The modification consisted of the removal of certain shims or washers to provide more head room. It was Schratzmeier's belief that the modified seat of his new squad car caused his back pain. However, he admitted that he never drove the new squad car without the modification. Therefore, he could not say whether or not the seat caused him any pain prior to the modification.

Two other Bensenville police officers testified. Each officer drove a different squad car. One officer testified that initially he did not experience any pain using the new, modified squad car seat. However, after returning from a leave he began to suffer from headaches, which he believed were caused by stress on his back and shoulders due to the car seat. About 10 days later the seat of his squad car broke. The officer indicated that the modified seat tilted back, so that it rested on the "cage." This apparently caused the seat to break. After the seat was repaired the officer, on his own, placed three washers under the seat. This seemed to eliminate the backward tilt to the seat and he no longer experienced headaches.

---

[2]Schratzmeier's testimony at the hearing indicates that he began experiencing back pain shortly after the new squad cars were received by the police department, which Schratzmeier estimated to be in July 1982. However, in his deposition testimony Schratzmeier indicated that the new squad cars were delivered in early May 1982 and put into service soon after. Therefore, he states in his deposition that he began experiencing pain as early as May 1982.

The second officer indicated that he never experienced any back pain with his own squad car, which apparently had the same modification as the other squad cars (including Schratzmeier's), but that he did experience back pain on one occasion when he used Schratzmeier's squad car.

A mechanical engineer, who was hired by the board, testified concerning measurements he took of a squad car seat. He also presented a drawing he made from these measurements. According to his testimony, the modification of the squad car seats due to the removal of washers from the floor brackets resulted in an extremely minor alteration to the tilt of the seat. In fact, according to his calculations, the change in the angle of the seat was only .08 of an inch.

Two doctors also testified, each indicating that Schratzmeier's back pain could have been caused by the new, modified squad car seat. Although one doctor indicated that a change of .08 of an inch to the tilt of the seat was probably not significant enough to cause a problem, the other doctor indicated that Schratzmeier's previous back injury made him predisposed to injury and more likely to be affected by minor changes. In fact, this second doctor indicated that something as minor as a sneeze could bring on recurrent back problems.

After considering all of the evidence, the board of trustees decided to grant Schratzmeier a "not line of duty" disability payment, indicating that Schratzmeier did not prove by a preponderance of the evidence that his back injury was related to his modified squad car seat. Schratzmeier apparently accepted the nonline of duty pension and did not seek judicial review of the Board's decision to deny the line of duty pension.

Over a year later, on August 14, 1984, Schratzmeier filed suit against Metrocom and Mahoney. In the complaint Schratzmeier alleged that he sustained back injury as a result of Mahoney's negligent modification of the seats on the Bensenville police department's new squad cars.

Initially, defendants moved for summary judgment on the basis of the statute of limitations. However, when that motion was denied, defendants moved for summary judgment contending that Schratzmeier was collaterally estopped, by virtue of the pension board's findings, from relitigating the issue of the cause of his back pain. This motion was granted, and the order, dated September 3, 1991, stated that "there is no just cause or reason to delay enforcement or appeal of this order." Schratzmeier filed a motion to reconsider, which was denied in an order dated November 26, 1991. This timely appeal followed.

OPINION

■ Collateral estoppel is a branch of the judicial doctrine of *res judicata,* whose underlying policy is to limit parties to a single opportunity to litigate a claim or issue fully and fairly. (*Raper v. Hazelett & Erdal* (1983), 114 Ill. App. 3d 649, 449 N.E.2d 268.) Collateral estoppel precludes the relitigation of any matter in issue which was actually or necessarily decided in a previous claim or cause of action between the same parties or their privies. (*Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 50, 430 N.E.2d 620.) It is well settled that this doctrine is applicable to the decisions of administrative agencies, as long as the agency was acting in an "adjudicatory," "judicial" or "quasi-judicial" capacity and there is an "identity of issues," that is, that the disputed issue of fact properly resolved by the agency is identical to the issue presented in the new claim. *Raper,* 114 Ill. App. 3d at 652; *Godare,* 103 Ill. App. 3d at 51.

Although plaintiff Schratzmeier recognizes this general principle of law, he seeks to avoid its application to this case by arguing that he was not afforded due process or given a full and fair opportunity to litigate the issue of causation at the disability hearing conducted by the Board. He concludes, therefore, that it would be manifestly unjust to give collateral estoppel effect to the Board's decision. We disagree.

As stated in *Raper,* for collateral estoppel to apply, the "full and fair opportunity to litigate" requirement is satisfied even if only a slight amount of evidence was presented on the disputed matter actually decided in the first suit. (*Raper,* 114 Ill. App. 3d at 653.) The record shows that at the pension board hearing there was a considerable amount of evidence presented on Schratzmeier's claim that he became disabled when the modified seats of his new squad car caused injury to his back. Furthermore, Schratzmeier was represented by an attorney, he presented witnesses and had an opportunity to cross-examine the expert witness brought in by the Board. The Board resolved the disputed issue of causation by rejecting Schratzmeier's claim for a line of duty pension and, instead, granting him a nonline of duty pension. Although Schratzmeier was free to appeal the Board's decision, he apparently did not do so and merely accepted the nonline of duty pension.

■ Under the above-stated circumstances, we believe that collateral estoppel must apply and that Schratzmeier is estopped from relitigating the question of whether his injuries were caused by the modified squad seats. By accepting the Board's decision and the nonline of duty pension, Schratzmeier accepted the Board's determination

that his back injury was unrelated to his work, *i.e.*, the modified squad car seat.

The decision in *McCulla v. Industrial Comm'n* (1992), 232 Ill. App. 3d 517, 597 N.E.2d 875, compels the same conclusion. In *McCulla* a fireman sought benefits under the Worker's Compensation Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*), contending that he had suffered injuries arising out of his employment. However, the Industrial Commission denied benefits on the basis of collateral estoppel because the firemen's pension board previously awarded the fireman a "not in duty" pension based upon its finding that the same injury was not work related. On review the court affirmed the Industrial Commission's decision, finding that the fireman was collaterally estopped from relitigating the issue of causation.

We note that defendants also raise the question of whether the trial court erred in determining that the statute of limitations did not bar Schratzmeier's claim. However, because we find that this is a classic case of collateral estoppel, we need not reach the limitations issue.

The order of the circuit court granting defendants summary judgment on the basis of collateral estoppel is hereby affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.