WAYNE TAYLOR *et al.*, Plaintiffs-Appellants, v. PEOPLES GAS LIGHT AND COKE COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—4276

Opinion filed September 28, 1995.—Rehearing denied October 27, 1995.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon and Lisa Thaviu, of counsel), for appellants.

Peoples Gas Light & Coke Co. (James Hinchliff, Peter Kauffman, and Steven S. List, of counsel), and Michael M. Conway, Mary Kay McCalla, and Patrick F. Solon, all of Hopkins & Sutter, both of Chicago, for appellee Peoples Gas Light & Coke Company.

Jon A. Duncan and Kevin D. Mack, both of Cichocki & Armstrong, Ltd., of Chicago, for appellee Willie Suggs.

Richard J. O'Brien and Mark B. Blocker, both of Sidley & Austin, of Chicago, for other appellees.

JUSTICE THEIS delivered the opinion of the court:

The plaintiffs appeal from a determination that the claims in their fourth amended complaint were barred under *res judicata* and collateral estoppel. Plaintiffs assert that (1) the court erred in finding their claims to be precluded by a prior arbitration determination; and (2) the court erred in dismissing their negligent hiring claim for failure to state a claim under Code of Civil Procedure section 2—615 (735 ILCS 5/2—615 (West 1992)).

In 1987, defendant Peoples Gas commenced an inquiry into the alleged theft of company gas meters and sale of narcotics by its employees. Peoples Gas retained defendant Special Operations Associates (SOA) to conduct an investigation into the matter. SOA assigned the task to its part-time employee, defendant Thomas Sheehan, and to an undercover investigator, defendant Willie Suggs (hereinafter referred to collectively as SOA defendants).

The investigation led to the indictment of 31 Peoples Gas employees, including Wayne Taylor, Jerry Leverson, and Carl E. Tigner, who were charged in early 1988 with meter theft. Shortly thereafter, Peoples Gas terminated the plaintiffs' employment. The plaintiffs' union, Gas Workers Local 18007, commenced grievance proceedings on the plaintiffs' behalf for wrongful termination, alleging, *inter alia*, that the plaintiffs committed no wrongdoing and that Peoples Gas discharged them without proof of their guilt.

In 1989, the State's Attorney entered a *nolle prosequi* for most of the 31 indictments, including those against Taylor, Leverson, and Tigner. Shortly thereafter, Taylor and Tigner initiated the instant civil action against Peoples Gas, the SOA defendants and Suggs. Leverson joined as a plaintiff in 1990. Plaintiffs' fourth amended complaint charged all the defendants with malicious prosecution (count I) and charged Peoples Gas with wrongful discharge (count II) and negligent hiring of the SOA defendants (count V). The complaint charged the SOA defendants with tortious interference with the contractual relationship between plaintiffs and Peoples Gas (count III) and with negligent employment of Suggs (count IV).

The complaint alleged that during the meter theft investigation, SOA was the agent of Peoples Gas, and Sheehan and Suggs were employees of SOA acting within the scope of their employment. Suggs,

whom the defendants knew or should have known had prior felony convictions and a bad reputation for honesty, knowingly provided the defendants with false information regarding the plaintiffs' involvement in the alleged thefts. Peoples Gas and the SOA defendants allegedly were aware the information was untrue and conspired to turn it over to the State's Attorney and grand jury in order to falsely prosecute the plaintiffs. The State repeatedly continued the case, allegedly relying upon the defendants' promises to produce credible evidence of the plaintiffs' guilt. When the evidence never materialized, the State dismissed the case, but after the plaintiffs had lost their jobs and incurred great expense.

While the civil suit remained pending, the plaintiffs' grievances proceeded to separate arbitration hearings. Both arbitrators issued comprehensive written orders, finding clear and convincing evidence that the plaintiffs had sold stolen gas meters and that their discharges were based upon proper cause. The orders indicate that in the grievance proceedings, the plaintiffs were represented by union counsel, offered their own testimony in support of their claims of innocence, and cross-examined the witnesses against them, including Suggs and Sheehan. In light of the arbitrators' rulings, Peoples Gas moved for summary judgment as to the instant action (735 ILCS 5/2—1005 (West 1992)), and the SOA defendants moved for dismissal under Code of Civil Procedure section 2—619(4) (735 ILCS 5/2—619(4) (West 1992)). Suggs later joined in SOA's motion. The defendants argued that the plaintiffs should be collaterally estopped from relitigating the claims in their complaint because each was premised upon the factual assertion that the plaintiffs were innocent of the thefts, the very issue decided adversely to the plaintiffs in the arbitration proceedings. Peoples Gas alternatively sought summary judgment as to the wrongful discharge claim under the doctrine of *res judicata*.

In response to the summary judgment motion, the plaintiffs argued, *inter alia*, that they were denied a full and fair opportunity to present their claims in the arbitration because they were required to accept representation by union counsel rather than counsel of their own choosing. In support of this argument, the plaintiffs submitted the unsigned affidavits of Taylor, Leverson, and Taylor's private attorney, Robert E. Gordon.

On September 15, 1993, following a hearing, the trial court entered an order granting the SOA defendants' motion to dismiss and the Peoples Gas motion for summary judgment. On September 23, 1993, the court entered an order granting Suggs' motion to dismiss and entering findings under Supreme Court Rule 304(a) (134 Ill. 2d

R. 304(a)) as to each of the defendants. On September 29, 1993, the court entered an agreed amended order vacating the order of September 23, 1993, granting Suggs' motion to dismiss and entering judgment in his favor, and entering Rule 304(a) findings as to all the defendants. The plaintiffs filed a motion to reconsider, which the court denied on November 1, 1993. The plaintiffs then brought the instant appeal.

On appeal, we initially address Suggs' contention that this court lacks jurisdiction over him because the plaintiffs failed to appeal from any order pertaining to him. The plaintiffs' amended notice of appeal was directed toward the orders of November 1, 1993, September 15, 1993, and September 23, 1993. Suggs points out that the September 23, 1993, order was vacated by the agreed amended order of September 29, 1993, and that the September 15, 1993, dismissal order was not directed to him. Suggs maintains that in order to confer jurisdiction over him, the notice of appeal should have specified the order of September 29, 1993, which dismissed the complaint as to him. We disagree.

■ The purpose of a notice of appeal is to inform the party prevailing in the trial court that the opposing party seeks review of the judgment; to this end, where the notice sufficiently sets forth the judgment complained of and the relief sought, mere formal defects will not deprive this court of jurisdiction. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380; *Lang v. Consumers Insurance Service, Inc.* (1991), 222 Ill. App. 3d 226, 583 N.E.2d 1147.) A notice of appeal need not designate a particular order to confer jurisdiction, as long as the order which is specified directly relates back to the judgment or order from which review is sought. (*Burtell*, 76 Ill. 2d at 434, 394 N.E.2d at 383; *Dalen v. Ozite Corp.* (1992), 230 Ill. App. 3d 18, 23, 594 N.E.2d 1365, 1367.) An unspecified judgment is reviewable if it is a "step in the procedural progression leading to the judgment specified in the notice of appeal." *Burtell*, 76 Ill. 2d at 435, 394 N.E.2d at 383; *In re Marriage of Marriott* (1994), 264 Ill. App. 3d 23, 35, 636 N.E.2d 1141, 1150.

■ In this case, the plaintiffs specifically appealed from the order of November 1, 1993, which denied reconsideration of the dismissal of the complaint "as to all defendants." The September 29, 1993, order dismissing the complaint against Suggs was a step in the procedural progression culminating in the denial of the motion for reconsideration. Further, although the notice of appeal erroneously referred to the September 23 rather than the September 29 order, it expressly sought review of the dismissal of the complaint against all the defendants. Accordingly, the notice of appeal fairly apprised

Suggs of the matters appealed and was sufficient to confer jurisdiction over him.

The plaintiffs contend that the court erred in determining that they were collaterally estopped by the arbitration decision from asserting the claims in their complaint.

■ Collateral estoppel operates to preclude relitigation of an issue that has been fairly, completely, and necessarily resolved in a prior proceeding. (*In re Nau* (1992), 153 Ill. 2d 406, 424, 607 N.E.2d 134, 142; *Local No. 193 v. City of Springfield* (1991), 211 Ill. App. 3d 166, 569 N.E.2d 1217.) The requirements for application of the doctrine are that (1) the issue decided in the prior adjudication is identical to that presented in the instant suit; (2) the party against whom the estoppel is asserted was a party or in privity with a party to the prior litigation; and (3) the prior suit resulted in a final judgment on the merits. *Nau*, 153 Ill. 2d at 424, 607 N.E.2d at 143.

Plaintiffs initially assert that collateral estoppel cannot apply because none of the parties in this case except Peoples Gas were parties to the arbitration or in privity with parties. In particular, the plaintiffs assert that neither the SOA defendants nor Suggs could be considered in privity with Peoples Gas.

■ The fact that these defendants may not have been parties to the arbitration does not defeat the application of collateral estoppel in this case. Unlike the doctrine of *res judicata*, collateral estoppel requires only that the party against whom the bar is asserted have been a party to the prior proceeding (*Nau*, 153 Ill. 2d at 424, 607 N.E.2d at 143; *Fried v. Polk Brothers, Inc.* (1989), 190 Ill. App. 3d 871, 878, 546 N.E.2d 1160, 1164) and that he have had a full and fair opportunity to contest the issue. (*Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253.) Thus, as long as the plaintiffs were parties or in privity with parties to the arbitration, it is irrelevant that SOA and Suggs were not parties, and the plaintiffs' argument is misplaced.

The plaintiffs next contend that the specific issues in the complaint were not "actually and necessarily decided" in the arbitration hearings. (*Case Prestressing Corp. v. Chicago College of Osteopathic Medicine* (1983), 118 Ill. App. 3d 782, 455 N.E.2d 811.) The plaintiffs assert that the sole issue before the arbitrators was whether Peoples Gas had proper cause to fire them, and not any question regarding the defendants' malicious prosecution of them, the tortious interference of SOA with the plaintiffs' employment relationship, or the negligent hiring of SOA or Suggs. In particular, relying upon the case of *Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 432, 530 N.E.2d 431, 437, the plaintiffs argue that the arbitrators lacked

authority to decide any matter not arising out of the terms of their collective-bargaining agreement.

■ As a general rule, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments; however, exceptions exist where it appears that the arbitration proceeding was unfair or the result unreliable, or where giving the award preclusive effect would be incompatible with other legal or contractual policies. *Lo Russo v. Industrial Comm'n* (1994), 258 Ill. App. 3d 59, 629 N.E.2d 753; *Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 953, 550 N.E.2d 654, 658-59; Restatement (Second) of Judgments § 84 (1982).

In *Ryherd v. General Cable Co.*, the court held that Federal labor laws do not preempt an employee's right to bring a civil suit for retaliatory discharge, even where an arbitrator has already determined that the discharge was founded upon just cause under the employee's collective-bargaining agreement. (*Ryherd*, 124 Ill. 2d 418, 530 N.E.2d 431; see *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904.) The court reaffirmed the rule in *Allis-Chalmers* that preemption applies only to those disputes arising out of the terms of the collective-bargaining agreement, and not claims brought under State rules that proscribe conduct or establish substantive rights. (*Ryherd*, 124 Ill. 2d at 425-26, 530 N.E.2d at 434, quoting *Allis-Chalmers*, 471 U.S. at 212, 85 L. Ed. 2d at 216, 105 S. Ct. at 1912; see also *Lingle v. Norge Division of Magic Chef, Inc.* (1988), 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877.) The court noted that retaliatory discharge requires an analysis of whether the termination violated any clearly mandated Illinois public policy, and concluded that this determination exceeds both the mandate and competence of a labor arbitrator. (*Ryherd*, 124 Ill. 2d at 428, 431, 530 N.E.2d at 435-36, 437; see also *Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 505, 568 N.E.2d 870, 875.) The court further stated that the right to be free of retaliatory discharge is an established, nonnegotiable State right which is not subject to the collective-bargaining process. Thus, it follows that a prior arbitration proceeding can have no collateral estoppel effect over a claim for retaliatory discharge. *Ryherd*, 124 Ill. 2d at 433, 530 N.E.2d at 438; see also *Alfieri v. CSX Corp.* (1990), 201 Ill. App. 3d 559, 569-70, 559 N.E.2d 166, 173.

Unlike retaliatory discharge, the torts asserted in this case, malicious prosecution, wrongful discharge, tortious interference, and negligent hiring, do not involve an analysis of firmly rooted Illinois public policy or statutes. Further, this case involves no question of Federal preemption, which formed the basis of the decisions in *Allis-Chalmers* and its progeny. In our opinion, *Ryherd* should not be construed so broadly as to preclude collateral estoppel effect for any

labor arbitration decision which impacts upon a State common law right.

■ In reaching its determination, the *Ryherd* court distinguished the case of *Ivery v. United States* (6th Cir. 1982), 686 F.2d 410, which closely resembles the case at bar. In *Ivery*, the court held that an employee was collaterally estopped from bringing a claim against his employer for malicious prosecution and wrongful discharge where an arbitrator previously concluded that the employee had committed the offense for which he was terminated. In discussing *Ivery*, *Ryherd* pointed out the *Ivery* court's acknowledgment that collateral estoppel would not apply in cases where it would be contrary to public policy. (*Ivery*, 686 F.2d at 413; *Ryherd*, 124 Ill. 2d at 433, 530 N.E.2d at 438.) We are unaware of any public policy precluding the application of collateral estoppel to the claims asserted in this case and thus follow the holding in *Ivery*.

In order to prevail on their claim for malicious prosecution, the plaintiffs would need to establish that the defendants lacked probable cause to proceed with the charges against them. (See *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 45, 411 N.E.2d 229, 232.) The arbitrators found clear and convincing evidence that the plaintiffs sold stolen meters, and this far surpasses a showing of probable cause. Peoples Gas demonstrated that while Sheehan conducted surveillance, each of the plaintiffs met with Suggs and sold him two stolen meters at a cost of $350 per meter. In exchange for Suggs' payment, both plaintiffs gave him written "receipts" which were produced at the arbitration hearings. In their defense, neither plaintiff disputed having met with Suggs on the day in question, but both offered nonculpable explanations for the meetings. Both arbitrators rejected the plaintiffs' stories, however, concluding that they were contradictory, inconsistent, and incredible. This finding was sufficient to preclude any claim for malicious prosecution.

The plaintiffs' claim for tortious interference with contract is contingent upon proof of an expectation of future employment with Peoples Gas. (See *Allstar Music, Inc. v. Eckhoff* (1994), 257 Ill. App. 3d 961, 968, 629 N.E.2d 816, 821-22.) The plaintiffs' employment was terminated based upon a valid arbitration decision that they committed meter theft. Thus, this claim cannot stand. Finally, the negligent hiring claims against Peoples Gas and SOA would require proof that the plaintiffs were damaged by such negligence. (*Louis Marsch, Inc. v. Pekin Insurance Co.* (1985), 140 Ill. App. 3d 1079, 1085, 491 N.E.2d 432, 436.) Even if the plaintiffs could prove that Peoples Gas was negligent in hiring SOA and that SOA negligently hired Suggs, the determination that the plaintiffs in fact committed the thefts would

preclude any finding that this negligence caused them to lose their jobs. The factual issues forming the basis for the plaintiffs' claims were actually and necessarily decided by the arbitrators. Thus, their civil claims were properly held to be barred.

■ The plaintiffs argue that the court misapplied the doctrine of *res judicata* to bar their claim against Peoples Gas for wrongful discharge. *Res judicata* requires that (1) the second suit be based upon the same claim, demand or cause of action as the prior one; (2) both cases involve the same parties or their privies; and (3) the first case was decided on the merits by a tribunal of competent jurisdiction. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432, 447 N.E.2d 834, 838.) Both the complaint and the arbitration involved the claim that the plaintiffs were discharged without proper cause. The complaint was directed against Peoples Gas, which was also a party to the arbitration. Finally, there is no dispute that the arbitrators' decisions were final judgments on the merits. Thus, *res judicata* was properly invoked.

Plaintiffs next argue that they lacked a "full and fair opportunity" to litigate their claims in the arbitration proceeding. Specifically, they were required to accept representation by union counsel instead of their private attorney, Robert Gordon, and were precluded from putting on witnesses and evidence in support of their claim.

■ As stated above, collateral estoppel will not be applied unless it appears that the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and that the application of the doctrine will not result in an injustice to that party. (*Fried*, 190 Ill. App. 3d at 878, 546 N.E.2d at 1164.) The "full and fair opportunity" requirement is satisfied even if only a slight amount of evidence was presented on the disputed matter decided in the first suit. (*Schratzmeier v. Mahoney* (1993), 246 Ill. App. 3d 871, 875, 617 N.E.2d 65, 68, citing *Raper v. Hazelett & Erdal* (1983), 114 Ill. App. 3d 649, 449 N.E.2d 268.) Further, "actually litigated" does not mean thoroughly litigated, but only that the parties disputed the issue and the trier of fact resolved it. (*Raper*, 114 Ill. App. 3d at 653, 449 N.E.2d at 271.) Collateral estoppel generally will apply as long as the party had a procedural, substantive, and evidentiary opportunity to be heard on the issue. *Fried*, 190 Ill. App. 3d at 878, 546 N.E.2d at 1164; see also *Raper*, 114 Ill. App. 3d at 653, 449 N.E.2d at 271.

Plaintiffs initially assert that they should not be bound by the arbitration proceedings because they were obligated to accept representation by union counsel. We are unaware of any authority holding a prior proceeding devoid of preclusive effect merely because a party

asserts, in retrospect, that he was denied counsel of his choice. The plaintiffs proceeded with union counsel under their own collective-bargaining agreement. Further, there is no indication that they voiced any particular objection about counsel's performance to the arbitrators during the course of the hearings.

As a basis for their dissatisfaction with union counsel, the plaintiffs now maintain that he failed to call "exonerating witnesses" on their behalf. Specifically, the plaintiffs claim that union counsel declined to call Nathaniel King, who allegedly would have testified that Taylor and Leverson were "framed" by Suggs, who carried out the gas meter sales himself and retained the proceeds.

We note, however, that the plaintiffs made no mention of King's alleged testimony until their motion to reconsider the dismissal of their complaint. At that point, it was up to the trial court to either accept or reject the proffered testimony. The allowance of new matter on a motion for reconsideration is subject to trial court discretion, but should not be permitted without a reasonable explanation as to why it was not available at the time of the original hearing. *Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 545 N.E.2d 689; see also *Fred Olson Motor Service v. Container Corp.* (1980), 81 Ill. App. 3d 825, 830, 401 N.E.2d 1098, 1102.

■ In this case, the plaintiffs admitted they had the opportunity to present evidence at the arbitration hearings, yet have offered no explanation as to why King's testimony was not offered at that time. Furthermore, the alleged substance of King's testimony was set forth in the affidavit of Robert Gordon, the plaintiffs' private attorney, attached to the motion to reconsider. Gordon's affidavit was based upon hearsay rather than personal knowledge and, as such, was not in compliance with Supreme Court Rule 191(a). 134 Ill. 2d R. 191(a); see *Smith v. United Farm Mutual Reinsurance* (1993), 249 Ill. App. 3d 686, 619 N.E.2d 263.

Beyond King's testimony, the plaintiffs fail to specify any other allegedly omitted witnesses or testimony. The arbitrators' memoranda indicate that union counsel zealously represented the plaintiffs at the grievance hearing, making arguments and calling witnesses on their behalf. Accordingly, they have failed to show that the arbitration hearings were unfair or unreliable.

The plaintiffs' final contentions are addressed to the merits of their negligent hiring claims against the SOA defendants and Peoples Gas. In light of our determination that the claims against the SOA defendants were properly dismissed based upon collateral estoppel (735 ILCS 5/2—619(4) (West 1992)), and that summary judgment was properly granted in favor of Peoples Gas based upon *res judicata*, we do not reach these arguments.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL and S. O'BRIEN, JJ., concur.