VENDETTA JACKSON, Plaintiff-Appellant, v. RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—96—3979

Opinion filed December 4, 1997.

Paul D. Geiger, of Chicago, for appellant.

David R. Kugler, of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Vendetta Jackson, was appointed a member of the City of Chicago police department on December 16, 1985, and was injured in the course of training on January 24, 1986. On June 24, 1993, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board) granted Jackson full duty disability benefits.

On February 23, 1995, the Board held a disability status review hearing. Prior to the admission of any substantive evidence, Jackson objected to the proceedings based upon the fact that two of the Board members resided in the same building in which she resided and had provided the Board with information regarding their own observations of Jackson's physical activities. One of the Board members who lived in the same building as Jackson was not present at the hearing. The other Board member, Mr. Thulis, responded that he did not live in the same building as Jackson but, nevertheless, voluntarily recused himself from the hearing.

During the hearing, Jackson testified that as of June 24, 1994, the date when she was granted duty disability benefits, she had been involved in physical therapy at River City Certified Physical Therapy. She went there three times a week to maintain her right leg at a certain performance level until she was released into a maintenance home program around August of 1994.

Jackson further testified that she saw Dr. Preston Wolin at Worker Rehabilitation Services in Chicago on December 5, 1994. Jackson was evaluated for eight hours, and a seven-page report concluded that Jackson's physical restrictions were permanent and that she did not have the physical capabilities of returning to work as a police officer. This report was submitted to the Board. Dr. Wolin agreed with the conclusion of the report and also submitted a letter to the Board regarding Jackson's August 5, 1994, visit.

When questioned by the Board, Jackson testified, in pertinent part, that she does not participate in physical sports but she did par-

ticipate in a neighborhood fund raiser which involved a walkathon wherein she completed a three-mile course in approximately one hour. She further testified that walking is part of her therapy and that she has three different braces she uses for her knee, depending on the situation involved, and that during this walkathon she was wearing a knee brace.

Dr. Alfred Akkeron, called by the Board, testified that he examined Jackson on August 9, 1994, at his office in Melrose Park. He testified that after reviewing Jackson's surgical reports and his physical examination of her, it was his opinion that she could return to her regular duties as a police officer.

On cross-examination, Dr. Akkeron testified that he did not recall whether there was any descriptive report or information with Jackson's records that outlined the physical requirements and demands for a Chicago police officer. Dr. Akkeron further testified that his report was inaccurate inasmuch as it indicated that his exam was of Jackson's left knee. Dr. Akkeron acknowledged that Jackson's injury was actually on the right knee. He explained this discrepancy by stating that he did not read his own report but merely signed it. Dr. Akkeron testified that, in reaching his opinion, he did not consider the opinion of Dr. Wolin that Jackson did not have the physical capabilities of returning to work as a police officer and that her physical restrictions were permanent.

Jean Blake, called by Jackson, testified that she is the medical administrator for the Chicago police department and as part of her duties she certifies whether or not police officers are fit to return to unrestricted police duties. Blake testified that because of the conflicting opinions of Dr. Wolin and Dr. Akkeron, she would get an independent orthopedic evaluation and would also send Jackson for a second functional capacity evaluation at a different vendor.

After considering the evidence, the Board voted to remove Jackson from the duty disability rolls of its fund. Jackson filed a timely petition for administrative review. On July 26, 1996, the circuit court affirmed the Board's decision. Jackson filed a motion for reconsideration which was denied. This appeal followed. We affirm.

As a preliminary matter, the Board directs our attention to Jackson's notice of appeal. The Board contends that Jackson's notice of appeal fails to identify the July 26, 1996, order affirming the Board's decision and does not describe the relief sought on appeal. The Board argues that Jackson's notice of appeal specifies only the circuit court's order of October 4, 1996, which denied Jackson's motion for reconsideration, and, therefore, this court may not have jurisdiction over this appeal.

■ Illinois Supreme Court Rule 303 provides that the notice of appeal "shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." 134 Ill. 2d R. 303(c)(2). However, the notice of appeal is to be liberally construed as a whole. *Glassberg v. Warshawsky*, 266 Ill. App. 3d 585, 638 N.E.2d 749 (1994). The purpose of a notice of appeal is to inform the party prevailing in the trial court that the opposing party seeks review of the judgment. *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 656 N.E.2d 134 (1995). Moreover, an appeal from a final judgment draws into issue all prior nonfinal orders that produced the final judgment. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433, 394 N.E.2d 380, 382 (1979). Thus, an unspecified judgment is reviewable if it is a " 'step in the procedural progression leading to the judgment specified in the notice of appeal.' " *Taylor*, 275 Ill. App. 3d at 659, quoting *Burtell*, 76 Ill. 2d at 435, 394 N.E.2d at 383.

■ In the present case, Jackson specifically appealed from the order of October 4, 1996, which denied her motion for reconsideration. The October 4, 1996, order expressly incorporated the July 26, 1996, order. Therefore, Jackson's notice of appeal fairly apprised the Board of both the July 26, 1996, order and the October 4, 1996, order. Accordingly, Jackson's notice of appeal was sufficient to confer jurisdiction upon this court.

■ The Administrative Review Law provides that our review extends to all questions of law and fact presented by the entire record. 735 ILCS 5/3—110 (West 1996). The statute limits our review to the record before us; we may not hear new or additional evidence. The rule that failure to raise an issue before the administrative body waives the issue for review in the appellate court applies equally to issues involving constitutional due process rights. *S.W. v. Department of Children & Family Services*, 276 Ill. App. 3d 672, 658 N.E.2d 1301 (1995). The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1996).

■ Further, this court will not reweigh evidence or upset credibility determinations but instead determines whether the Board's decision is against the manifest weight of the evidence. *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 639 N.E.2d 1318 (1994). Judgment is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or when the finding appears to be unreasonable, arbitrary, or not based upon the evidence. *Obasi*, 266 Ill. App. 3d 693, 639 N.E.2d 1318. *Magett v. Cook County Sheriff's Merit Board*, 282 Ill. App. 3d 282, 669 N.E.2d 616 (1996).

■ Jackson first contends that the decision of the Board was against the manifest weight of the evidence. We disagree. The Board had the opportunity to hear and observe the testimony presented at the hearing and examine Jackson's medical records, including other documents relating to Jackson's disability status. Evidence that Jackson has the ability to complete a three-mile walk in less than one hour was also made a part of the record. This evidence was unrefuted.

Although Jackson posits that walking is a part of her therapy and that she wears a knee brace when walking, the fact that she has the ability to walk substantial distances at a steady pace severely diminishes her claim of disability. After considering all the evidence, the Board found that Jackson was able to perform an assigned duty in the police service. Based upon the record before us, we cannot find that the Board's decision was against the manifest weight of the evidence.

■ Jackson also alleges that the Board's investigatory role combined with its adjudicatory role violated her rights to due process and a fair and impartial hearing. We note that an administrative proceeding is governed by the fundamental principles and requirements of due process of law. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 606 N.E.2d 1111 (1992). Due process requires that an administrative proceeding be conducted by a fair and impartial tribunal. *Klomann v. Illinois Municipal Retirement Fund*, 284 Ill. App. 3d 224, 674 N.E.2d 38 (1996). A person challenging the impartiality of a tribunal must overcome the presumption that those serving on the tribunal are fair and honest. *Klomann*, 284 Ill. App. 3d 224, 674 N.E.2d 38. In the absence of personal bias demonstrated in the record, the mere combination of investigatory and adjudicatory functions will not render a tribunal biased in violation of due process. *Klomann*, 284 Ill. App. 3d 224, 674 N.E.2d 38.

In the instant case, the record fails to reveal any evidence of personal bias on the part of the Board. The Board's actions in obtaining information that Jackson completed a three-mile walkathon in less than one hour and questioning Jackson regarding her participation in the walkathon during her disability status review hearing is insufficient evidence of personal bias. The Board's actions were permissible under its duty to make findings and conclusions on questions of fact relating to Jackson's disability status. As such, we find Jackson has failed to satisfy her burden of persuading this court that the Board's actions resulted in personal bias in violation of her rights to due process.

■ Finally, Jackson contends that the Board violated the provi-

sions of section 5—156 of the Illinois Pension Code (40 ILCS 5/5—156 (West 1994)) in allowing Dr. Akkeron to testify regarding Jackson's disability status. Careful examination of the record indicates that Jackson failed to raise this issue during her disability status review hearing. As previously noted, the Administrative Review Law limits our review to the record before us; we may not hear new or additional evidence. 735 ILCS 5/3—110 (West 1996); *Illinois Telephone Corp. v. Illinois Commerce Comm'n*, 260 Ill. App. 3d 919, 632 N.E.2d 210 (1994). Thus, Jackson has waived this issue for review in the appellate court.

For the foregoing reasons, the order of the Board and the order of the circuit court affirming the Board's decision are affirmed.

Affirmed.

HARTMAN, P.J., and HOFFMAN, J., concur.